STATE of Wisconsin, Plaintiff-Respondent,

v.

Patricia A. WEED, Defendant-Appellant-Petitioner.

Supreme Court

*No. 01–1476–CR. Oral argument February 18, 2003.—Decided July 3, 2003.*

2003 WI 85

(Also reported in 666 N.W.2d 485.)

For the defendant-appellant-petitioner there were briefs by *T. Christopher Kelly* and *Kelly & Habermehl, S.C.,* Madison, and oral argument by *T. Christopher Kelly.*

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. WILLIAM A. BABLITCH, J. The defendant, Patricia Weed (Weed) petitioned this court for review of a court of appeals' decision[1] that upheld a circuit court's judgment of conviction and order denying post-conviction relief. There are a number of issues presented: (1) whether the circuit court erroneously exercised its discretion in admitting a hearsay statement made by Weed's deceased husband; (2) whether the admitted hearsay statement violated Weed's right to confrontation; (3) whether Weed received ineffective assistance of counsel because her attorney failed to object to the statement on confrontation grounds; and (4) whether the constitutional right of a criminal defen-

---

[1] *State v. Weed,* No. 01–1476–CR, unpublished slip op. (Wis. Ct. App. May 16, 2002).

441

dant to testify on his or her behalf is a fundamental right that can only be personally waived by the defendant with an on-the-record colloquy.

¶ 2. Based on our review of the record, we conclude that the circuit court did not erroneously exercise its discretion in admitting the hearsay statement under the recent perception exception to the hearsay rule. We further conclude that admission of the hearsay statement did not violate Weed's right to confrontation since it had particularized guarantees of trustworthiness. Nevertheless, even if the admitted hearsay violated Weed's right to confrontation, the error was harmless because in examining the effect of the error, " 'it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' " *State v. Harvey,* 2002 WI 93, ¶ 44, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting *Neder v. United States,* 527 U.S. 1, 15–16 (1999), quoting in turn *Chapman v. California,* 386 U.S. 18, 24 (1967)). Consequently, Weed was not denied the effective assistance of counsel because admission of the hearsay statement was not prejudicial. Finally, we conclude that the constitutional right of a criminal defendant to testify on his or her behalf is a fundamental right. Accordingly, we hold that a circuit court should conduct an on-the-record colloquy to ensure that the defendant is knowingly, intelligently, and voluntarily waiving his or her right to testify. In this case, the circuit court did not conduct a colloquy; however it conducted a post-conviction hearing and found that Weed had waived her right to testify. Based on our review of the record and the evidence from the post-conviction hearing, we agree with the circuit court that Weed knowingly, intelligently, and voluntarily waived

her right to testify, even though the circuit court did not conduct a colloquy. Accordingly, we affirm the decision of the court of appeals.

## FACTS AND PROCEDURAL HISTORY

¶ 3. On September 12, 1998, Weed and her husband, Michael Weed (Michael), were invited to dinner at the cottage of Fred Fuerbringer (Fuerbringer), who was a good friend of Michael's. As the evening progressed, the atmosphere became tense when the conversation turned to Weed's recent suicide attempt. Weed was allegedly upset that Michael had brought another woman with him when he had visited her at the hospital when she was being treated for the attempted suicide. Michael allegedly responded that Weed should "keep her nose out of his business and not tell lies." After several interchanges, Weed allegedly stated that "she was going to divorce him [Michael] and take his pension, [and] make him the poorest asshole in Portage." At this point, Fuerbringer and his son, Chris, went outside with Michael to start a fish fry for dinner. While they were outside lighting the kettle, Weed came out of the cottage and told Michael she wanted the keys to the car so she could go home. Michael told her she could not have the keys because she had been drinking and had not yet eaten anything. Weed then went back into the cottage, and Michael allegedly said in front of Fuerbringer and Chris, "that's the reason I took the bullets out of the .357." According to Chris's testimony, Michael made this same statement about unloading the gun earlier in the evening when Chris and Michael were playing cards in the cottage.

¶ 4. Three days later, on September 15, 1998, Weed shot and killed Michael using the .357 handgun. Weed shot at Michael six times, hitting him at least four

times in the arm, lower back and genitalia. The shooting occurred after Michael had told Weed earlier that day that he was in love with another woman and that he wanted a divorce. After the shooting, Weed called the Columbia County Sheriff's Department, identified herself, and stated that she shot her husband. In a statement to police at the scene Weed said "I shot him; he's in love with another woman and I cannot live without him."

¶ 5. The State of Wisconsin (State) charged Weed with first-degree intentional homicide in violation of Wis. Stat. § 940.01(1) (1997–98).[2] Weed was found guilty by a jury and was sentenced to life in prison, plus two years for using a dangerous weapon. Prior to trial, the circuit court, Richard L. Rehm presiding, considered motions in limine, which included whether the hearsay testimony relating to Michael's statement regarding unloading the .357 should be excluded. The State argued that the statement was admissible under Wis. Stat. § 908.045(2) as a statement of recent perception.[3] Weed claimed that the statement should be ex-

---

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

Wisconsin Stat. § 940.01(1) provided:

"OFFENSES. (a) Except as provided in sub. (2), whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony."

[3] Wisconsin Stat. § 908.045 provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(2) STATEMENT OF RECENT PERCEPTION. A statement, not in response to the instigation of a person engaged in investigating, litigating, or settling a claim, which narrates, describes, or

cluded because there was no indication of when Michael allegedly took the bullets out of the gun and there was no corroborating evidence that she had actually loaded the gun. The circuit court decided not to exclude the statement, but noted a concern with laying the foundation, particularly with respect to the recency of the perceived event (i.e. removal of the bullets). In its written order, dated June 28, 1999, the circuit court ordered that Michael's statement "shall be admitted subject to foundation on relevancy."

¶ 6. At the trial, Weed did not testify on her behalf, and the circuit court did not conduct a colloquy with Weed to ensure that she was knowingly, intelligently, and voluntarily waiving her right to testify.

¶ 7. Weed filed a post-conviction motion for a new trial based on the following: (1) the hearsay testimony about Michael's statement regarding unloading the .357 was inadmissible and violated her right to confrontation; (2) she received ineffective assistance of counsel because her attorney failed to object to the hearsay on the grounds that it violated her right to confrontation; and (3) she did not knowingly and voluntarily waive her right to testify on her own behalf. The circuit court received briefs from both Weed and the State and held an evidentiary hearing on Weed's motion. Weed testified at the post-conviction hearing that she only intended to scare Michael with the gun, not shoot him, and that she had no recollection of actually firing the gun. Weed also testified that she was never informed of her right to testify; however, her trial counsel testified that he had discussed the right to testify with Weed on numerous

explains an event or condition recently perceived by the declarant, made in good faith, not in contemplation of pending or anticipated litigation in which the declarant was interested, and while the declarant's recollection was clear.

occasions. After reviewing the briefs and the record, the circuit court denied Weed's motion and concluded that "based on the post-trial testimony of defendant's counsel, other choices made by the defendant during trial, and the court's interaction with the defendant during the course of the trial, I find that she freely, intelligently, and voluntarily waived her right to give testimony on her behalf."

¶ 8. Weed appealed the judgment of conviction and the order denying post-conviction relief. In an unpublished per curiam opinion, the court of appeals affirmed both the judgment and order of the circuit court, concluding that any error the circuit court may have made in admitting the hearsay was harmless and that Weed knowingly and voluntarily waived her right to testify. Weed petitioned this court for review, which was granted on September 18, 2002.

## STANDARDS OF REVIEW

¶ 9. A circuit court's decision regarding the admissibility of a hearsay statement is within the discretion of the circuit court. *Christensen v. Econ. Fire & Cas. Co.,* 77 Wis. 2d 50, 55, 252 N.W.2d 81 (1977). The circuit court has broad discretion in determining the relevance and admissibility of evidence and its decision will not be reversed absent an erroneous exercise of discretion. *State v. Oberlander,* 149 Wis. 2d 132, 140–41, 438 N.W.2d 580 (1989). This court will uphold a circuit court's decision to admit or exclude evidence if the court examined the relevant facts, applied a proper legal standard, and reached a reasonable conclusion using a rational process. *Martindale v. Ripp,* 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698.

█

¶ 10. Whether admission of a hearsay statement violates a defendant's right to confrontation presents a question of law that this court reviews de novo. *Lilly v. Virginia,* 527 U.S. 116, 136–37 (1999).

¶ 11. This court's review of an ineffective assistance of counsel claim is a mixed question of fact and law. *State v. Erickson,* 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). The circuit court's findings of fact will not be disturbed unless they are clearly erroneous. *Id.* "However, the ultimate determination of whether the attorney's performance falls below the constitutional minimum is a question of law which this court reviews independently of . . . the circuit court." *Id.*

¶ 12. The issue of whether a criminal defendant can only waive his or her constitutional right to testify expressly and personally requires the application of constitutional principles. *State v. Huebner,* 2000 WI 59, ¶ 16, 235 Wis. 2d 486, 611 N.W.2d 727. Thus, we review such questions independently. *Id.*

¶ 13. The determination of whether Weed knowingly and voluntarily waived her constitutional right to testify presents a question of constitutional fact. *State v. Hajicek,* 2001 WI 3, ¶ 14, 240 Wis. 2d 349, 620 N.W.2d 781. A question of constitutional fact is " 'one whose determination is decisive of constitutional rights.' " *Id.* (quoting *State v. Martwick,* 2000 WI 5, ¶ 17, 231 Wis. 2d 801, 604 N.W.2d 552). The issue of whether Weed waived her right to testify is a question of constitutional fact because the determination requires application of a constitutional standard to un-

447

controverted facts. *Id.* A question of constitutional fact presents a mixed-question of fact and law that is reviewed using a two-step process. *Id.,* ¶ 15 (citing *Martwick,* 231 Wis. 2d 801, ¶ 16; *State v. Phillips,* 218 Wis. 2d 180, 189, 577 N.W.2d 794 (1998)). First, we review the circuit court's findings of historical fact using a deferential standard of review and will uphold the circuit court's findings unless they are clearly erroneous. *Id.* Second, we review the circuit court's determination of constitutional fact de novo. *Id.*

## ANALYSIS

### A. WHETHER THE CIRCUIT COURT ERRONEOUSLY EXERCISED ITS DISCRETION IN ADMITTING THE HEARSAY STATEMENT MADE BY WEED'S DECEASED HUSBAND

¶ 14. The circuit court admitted the hearsay statement under the recent perception exception to the hearsay rule. The exception for a statement of recent perception under Wis. Stat. § 908.045(2) requires that (1) the statement was not made in response to the instigation of a person engaged in investigating, litigating, or settling a claim and was made in good faith with no contemplation of pending or anticipated litigation in which the declarant would be an interested party; (2) the statement narrated, described, or explained an event or condition recently perceived by the declarant; and (3) the statement was made while the declarant's recollection is clear. *See* § 908.045(2).

¶ 15. The recent perception exception is similar to the hearsay exceptions for present sense impression and excited utterances,[4] "but was intended to allow more time between the observation of the event and the statement." *Kluever v. Evangelical Reformed Immanuels Congregation*, 143 Wis. 2d 806, 813–14, 422 N.W.2d 874 (Ct. App. 1988). The exception for statements of recent perception has not been widely adopted due to concerns regarding the time lapse between a declarant's perception and description of an event.[5] To address these concerns, Wisconsin added the aforementioned limitations when it adopted the exception so as to assure accuracy and trustworthiness. *Id.* at 814 (citing Judicial Council Committee's Note—1974, Wis. Stat. § 908.045).

> The [recent perception] exception is based on the premise that probative evidence in the form of a noncontemporaneous, unexcited statement which fails to satisfy the present sense impression or excited utterance exceptions would otherwise be lost if the recently perceived statement of an unavailable declarant is excluded.
>
> The exception's purpose, therefore, is to admit probative evidence which in most cases could not be admitted under other exceptions due to the passage of time . . . .

*Id.* (citations omitted).

---

[4] *See* Wis. Stat. § 908.03(1) and (2).

[5] Kenneth E. Kraus, Comment, *The Recent Perception Exception to the Hearsay Rule: A Justifiable Track Record*, 1985 Wis. L. Rev. 1525, 1528.

¶ 16. Weed argues that the circuit court erroneously exercised its discretion in admitting Michael's statement regarding unloading the .357 because the statement did not meet the statutory requirements for admissibility under Wis. Stat. § 908.045(2). Weed principally argues that Michael's statement was inadmissible under the exception due to the lack of a proper foundation; specifically, that the Fuerbringers could not testify as to the day Michael unloaded the gun. We are not persuaded.

¶ 17. First, we note that Michael's statement was not made in response to any pending or anticipated investigation or litigation and appeared to be made in good faith. Michael's comment was made to his good friend, Fuerbringer, and Fuerbringer's son after Weed attempted to engage in dangerous behavior; namely, driving while intoxicated.

¶ 18. Second, Michael's statement described an event—taking the bullets out of the .357—that was recently perceived by Michael. Both Fuerbringer and his son testified that they thought the reason Michael stated that he took the bullets out of the gun was because of Weed's recent suicide attempt. This is a reasonable conclusion based on the testimony that the conversation at the Fuerbringers' cottage became tense when it turned to Weed's recent suicide attempt, and Michael made the statement after Weed attempted to drive after she had been drinking. Weed's attempted suicide occurred on September 4, 1998, and she was released from the hospital on September 9, 1998—just three days before the dinner at the Fuerbringers' cottage. Thus, even though the Fuerbringers could not testify as to the exact date Michael allegedly took the

bullets out of the gun, it appears that it would have been within, at the most, eight days.

¶ 19. In analyzing the recency of an event under the exception, the court of appeals has stated that "[t]he mere passage of time, while important in a determination of whether the event was recently perceived, is not controlling . . . . A determination regarding recency of perception depends on the particular circumstances of the case . . . ." *Kluever,* 143 Wis. 2d at 813. Moreover, as noted above, the recent perception exception was intended to "allow more time between the observation of the event and the statement," as opposed to the exceptions for present sense impression and excited utterances. *Id.* at 814; *see also State v. Ballos,* 230 Wis. 2d 495, 507, 602 N.W.2d 117 (Ct. App. 1999).

¶ 20. Third, the statement appears to have been made when Michael's recollection was clear. Weed claims that Michael had been drinking and therefore could not have had a clear recollection. While Fuerbringer testified that Michael had drank a few beers and then switched to soda, there was no indication that Michael's recollection was not clear when he made the statement to Fuerbringer and Chris about unloading the gun.

¶ 21. Thus, based on our review of the record and the circuit court's rulings regarding the admissibility of Michael's statement, we conclude that the circuit court did not erroneously exercise its discretion in admitting Michael's statement under the recent perception exception to the hearsay rule.[6]

---

[6] We note that we are not overruling *State v. Stevens,* 171 Wis. 2d 106, 490 N.W.2d 753 (Ct. App. 1992), sub silencio as claimed by the concurrence. *Stevens* dealt with a different issue: what constitutes a "recently perceived event." The court con-

451

## B. WHETHER THE ADMITTED HEARSAY STATEMENT VIOLATED WEED'S RIGHT TO CONFRONTATION

¶ 22. We next examine whether admitting the statement violated Weed's right to confrontation. The right to confront a witness is guaranteed by Article 1, Section 7 of the Wisconsin Constitution and the Sixth Amendment to the United States Constitution.[7] The

cluded that the recent perception exception "does not apply to the aural perception of an oral statement privately told to another person," reasoning that what must be perceived is an event or condition since "there will generally be no doubt that an event occurred . . . ." *Id.* at 119. We further note that corroboration in and of itself does not determine the admissibility of a hearsay statement under the recent perception exception. *See* concurrence, ¶ 56. Rather, a statement of recent perception is admissible if the three criteria under Wis. Stat. § 908.045(2) are met.

[7] Article 1, Section 7 of the Wisconsin Constitution states:

Rights of accused. SECTION 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

The Sixth Amendment to the United States Constitution states:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory

threshold question in examining whether a defendant's right to confrontation is violated by the admission of hearsay evidence is whether that evidence is admissible under the rules of evidence. *State v. Bauer,* 109 Wis. 2d 204, 210, 325 N.W.2d 857 (1982). Only after it is established that evidence is admissible pursuant to a hearsay exception is it necessary to consider the confrontation clause. *Id.* We have stated that the "overarching objective of the right of confrontation is to promote the reliability of the truth-determining process in a criminal trial." *State v. Thomas,* 144 Wis. 2d 876, 887, 425 N.W.2d 641 (1988) (citing *United States v. Inadi,* 475 U.S. 387 (1986)). Thus, the right to confrontation has a similar purpose as the hearsay rule and its exceptions: "to ensure that the trier of fact has a satisfactory basis for evaluating the truthfulness of the evidence admitted in a criminal case." *State v. Tomlinson,* 2002 WI 91, ¶ 40, 254 Wis. 2d 502, 648 N.W.2d 367 (citing *Bauer,* 109 Wis. 2d at 210). Although similar in purpose, the admissibility of evidence pursuant to a hearsay exception is insufficient to ensure compliance with a defendant's constitutional right to confrontation. *Id.* (citing *Ohio v. Roberts,* 448 U.S. 56, 63 (1980)).

¶ 23. The United States Supreme Court has established a two-step approach for analyzing the admission of hearsay evidence under the confrontation clause. *Roberts,* 448 U.S. at 65–66. First, the witness must be "unavailable" for trial. *Id.* Second, the statement of the unavailable witness must bear some "indicia of reliability." *Id.* at 65 (quoting *Dutton v. Evans,* 400 U.S. 74, 89 (1970)). With respect to the second prong, " '[r]eliability is shown if the evidence falls within a firmly rooted hearsay exception or 'upon a

process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

showing of particularized guarantees of trustworthiness.'" *State v. Moore,* 921 P.2d 122, 144 (Haw. 1996) (quoting *State v. Ortiz,* 845 P.2d 547, 555 (Haw. 1993), quoting in turn *Roberts,* 448 U.S. at 66).

¶ 24. It is undisputed that Michael was "unavailable" to testify due to his death; therefore, we next turn to whether his statement falls within a firmly rooted hearsay exception or if the statement is supported by particularized guarantees of trustworthiness. A hearsay exception is "firmly rooted" if "in light of 'longstanding judicial and legislative experience,' it 'rest[s] [on] such [a] solid foundation that admission of virtually any evidence within [it] comports with the substance of the constitutional protection.' " *Lilly,* 527 U.S. at 126 (quoting *Idaho v. Wright,* 497 U.S. 805, 817 (1990); *Roberts,* 448 U.S. at 66). In *Lilly,* the U.S. Supreme Court noted that the hearsay exception for spontaneous declarations is "firmly rooted" because it is at least 200 years old and is widely accepted among the states. *Id.* In contrast, the recent perception exception has not been deemed firmly rooted since it is a relatively recent exception that has only been adopted by a few states, and is not based in the common law. *See, e.g., State v. Ross,* 919 P.2d 1080, 1089 (N.M. 1996).[8] Assuming that the recent perception exception is not firmly rooted, we next consider whether Michael's statement was supported by particularized guarantees of trustworthiness. Even if a hearsay exception is not firmly rooted, it may satisfy a defendant's right to confrontation if the hearsay statement has particularized guarantees of trust-

[8] *See also* Kristen Komer, "Criminal Procedure: Defendants' Rights," in *Developments in State Constitutional Law: 1996,* 28 Rutgers L.J. 915, 1035–36 n. 42 (1997).

worthiness. *See, e.g., State v. Bintz,* 2002 WI App 204, 257 Wis. 2d 177, 650 N.W.2d 913; *State v. Murillo,* 2001 WI App 11, 240 Wis. 2d 666, 623 N.W.2d 187.

¶ 25. In evaluating whether a statement evinces particularized guarantees of trustworthiness, we consider the "totality of the circumstances, but . . . the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Wright,* 497 U.S. at 819. Some factors that have been considered in assessing the reliability of a statement include spontaneity, consistency, mental state, and a lack of motive to fabricate. *Id.* at 821. We look to see "if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility . . . ." *Id.* at 820. In other words, we examine whether the statement is "so trustworthy that adversarial testing would add little to its reliability." *Id.* at 821.

¶ 26. In this case, Michael's statement appeared to have particularized guarantees of trustworthiness to satisfy the confrontation clause. Michael's statement was a spontaneous comment to his good friend and his friend's son in response to Weed's attempt to drive while intoxicated. Michael allegedly made the statement twice—once to Chris inside the cottage and again to both Fuerbringer and Chris when they were outside starting the fish fry. There also was not an apparent motive for Michael to fabricate the statement.

¶ 27. However, Weed notes that Michael had been drinking and contends that his statement was not trustworthy because he made it in response to her humiliating comments (e.g. Weed's comment that she

would divorce him and make him the "poorest asshole in Portage"). We acknowledge that Michael's mental state might have been affected by having a few beers, although Fuerbringer testified that Michael later switched to soda. We also recognize that the conversation at the cottage was tense, with both Michael and Weed making negative comments about each other. Nevertheless, upon reviewing the totality of the circumstances surrounding Michael's statement, it still appears that his statement had particularized guarantees of trustworthiness. Although Michael had a few beers, there was no indication that Michael was drunk and making inaccurate or untruthful statements. Furthermore, even though Michael and Weed spoke negatively about each other, this does not mean that Michael's statement was untrue. Even if Michael intended to disparage Weed by stating "[t]hat's why I took the bullets out of the .357," this does not necessarily undermine the veracity of his statement. In addition, it seems that if Michael's primary intention was to disparage Weed, he could have done so more directly than describing an act that he had recently performed (i.e. taking bullets out of the gun).

¶ 28. Even if Weed's right to confrontation was violated when the circuit court admitted Michael's statement, we deem that the error was harmless. The determination of a violation of the confrontation clause "does not result in automatic reversal, but rather is subject to harmless error analysis." *State v. Williams,* 2002 WI 118, ¶ 2, 256 Wis. 2d 56, 652 N.W.2d 391 (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986)). In analyzing Weed's hearsay challenge and ultimately concluding that any error was harmless, the court of appeals appeared to employ a sufficiency of the

evidence standard: "Because there was sufficient evidence, other than Michael's alleged hearsay statement, to convict Patricia [Weed] beyond a reasonable doubt, we hold that any error in the admission of the Fuerbringers' testimony was harmless." *State v. Weed,* No. 01–1476–CR, unpublished slip op., ¶ 5 (Wis. Ct. App. May 16, 2002). To the extent that the court of appeals relied on a sufficiency of the evidence standard, it was in error.

¶ 29. To assess whether an error is harmless, we focus on the effect of the error on the jury's verdict. *Harvey,* 254 Wis. 2d 442, ¶ 44; *see also State v. Carlson,* 2003 WI 40, ¶ 87, 261 Wis. 2d 97, 661 N.W.2d 51 (Sykes, J., dissenting). This test is " 'whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' " *Harvey,* 254 Wis. 2d 442, ¶ 44 (quoting *Neder,* 527 U.S. at 15–16, quoting in turn *Chapman,* 386 U.S. at 24). We have held that "in order to conclude that an error 'did not contribute to the verdict' within the meaning of *Chapman,* a court must be able to conclude 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *Id.,* ¶ 48 n.14 (quoting *Neder,* 527 U.S. at 18). In other words, if it is "clear beyond a reasonable doubt that a rational jury would have convicted absent the error," then the error did not " 'contribute to the verdict.' " *Neder,* 527 U.S. at 15, 18 (citation omitted).

¶ 30. We begin by evaluating the nature of the error in this case and the harm it is alleged to have caused. *See, e.g., Harvey,* 254 Wis. 2d 442, ¶¶ 47–48; *Carlson,* 2003 WI 40, ¶ 88 (Sykes, J., dissenting). Michael's statement about unloading the .357 was admitted into evidence through the testimony of Fuer-

457

bringer and his son at trial. Weed's defense counsel cross-examined both Fuerbringer and his son regarding the circumstances surrounding the statement. For example, Weed's counsel brought out that Fuerbringer and his son had also been drinking that evening, that Fuerbringer was one of Michael's best friends, that Fuerbringer had "no idea whether Mike was serious" when he made the statement, and that Fuerbringer did not know whether Michael had actually unloaded the gun.

¶ 31. The hearsay statement was a minor piece of evidence in the State's case against Weed. Although the statement had some probative value, it was not a significant part of the case. It was undisputed that Weed shot and killed Michael; thus, the only issue was whether she intended to kill him. The State presented overwhelming evidence that Weed intended to kill Michael, which included the following: (1) Weed's statement to police—"I shot him; he's in love with another woman and I cannot live without him;" (2) Weed's statements to the police that she was upset and angry that Michael was seeing another woman and wanted a divorce, and that she wished he would die of AIDS; (3) Weed's statement to the police that having an affair was something "she could not forgive;" and (4) the fact that Weed shot off an entire round, with at least four shots hitting Michael primarily in the genital area.

¶ 32. In light of defense counsel's cross-examination of Fuerbringer and his son, the low probative value of Michael's statement, and the overwhelming evidence presented by the State, we conclude that the admission of the hearsay statement was not prejudicial. In other words, it is *not* the case that "the jury may not have been persuaded of the defendant's guilt had it not been presented with the erroneously admit-

ted duplicative evidence." *State v. Billings,* 110 Wis. 2d 661, 670, 329 N.W.2d 192 (1983). Thus, we conclude that the admission of Michael's statement did not contribute to the verdict because it is "clear beyond a reasonable doubt that a rational jury would have convicted absent the error." *Neder,* 527 U.S. at 18.

## C. WHETHER WEED RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HER ATTORNEY FAILED TO OBJECT TO THE HEARSAY STATEMENT ON CONFRONTATION GROUNDS

¶ 33. There is a two-part test for determining whether counsel's actions constituted ineffective assistance in the constitutional sense: deficient performance and prejudice to the defendant. *State v. Pitsch,* 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). The U.S. Supreme Court has set forth the test as follows: "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The first prong requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *State v. Harvey,* 139 Wis. 2d 353, 375, 407 N.W.2d 235 (1987). With respect to the second prong, the defendant is obligated to show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* (citations omitted).

¶ 34. The U.S. Supreme Court has stated that "there is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland,* 466 U.S. at 697.

¶ 35. Because we have concluded that any error by the circuit court in admitting Michael's statement was harmless, we accordingly conclude that any deficient performance by Weed's trial counsel with respect to failing to object to the admissibility of the statement was not prejudicial.

D. WHETHER THE CONSTITUTIONAL RIGHT OF A CRIMINAL DEFENDANT TO TESTIFY ON HIS OR HER BEHALF IS A FUNDAMENTAL RIGHT THAT CAN ONLY BE PERSONALLY WAIVED BY THE DEFENDANT WITH AN ON-THE-RECORD COLLOQUY

¶ 36. Weed contends that her constitutional right to testify was violated when the circuit court presumed waiver of her right to testify from her silence. Weed asserts that a criminal defendant's right to testify is a fundamental constitutional right that can only be waived personally by the defendant with an on-the-record colloquy. However, after conducting a post-conviction hearing, the circuit court concluded that based on the testimony of Weed's trial counsel, the

court's interaction with Weed throughout the trial, and other choices made by Weed during the trial, that she had freely, intelligently, and voluntarily waived her right to testify.

¶ 37. A criminal defendant has a constitutional right to testify as "part of the due process rights of the defendant protected by the Fourteenth Amendment." *State v. Albright,* 96 Wis. 2d 122, 128, 291 N.W.2d 487 (1980) (footnote omitted). Thus, "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York,* 401 U.S. 222, 225 (1971). In *Albright,* the right to testify was characterized as "an important constitutional right," but not a fundamental right that "can only be waived in open court on the record by the defendant." *Albright,* 96 Wis. 2d at 130. Thus, the court in *Albright* concluded that "counsel, in the absence of the express disapproval of the defendant on the record during the pretrial or trial proceedings, may waive the defendant's right to testify." *Id.* at 133. Subsequently, the U.S. Supreme Court has held that "the right to testify on one's own behalf in defense to a criminal charge is a fundamental constitutional right." *Rock v. Arkansas,* 483 U.S. 44, 53 n.10 (1987). Consistent with the U.S. Supreme Court's decision in *Rock,* the court of appeals has concluded that a "defendant's right to testify is *fundamental* in nature." *State v. Simpson,* 185 Wis. 2d 772, 778, 519 N.W.2d 662 (Ct. App. 1994) (emphasis added); *see also State v. Wilson,* 179 Wis. 2d 660, 670, 508 N.W.2d 44 (Ct. App. 1993).

¶ 38. Despite the court of appeals' recognition that a criminal defendant's right to testify is fundamental, it nevertheless held that the principles of waiver set forth in *Albright* were precedential law, and "therefore,

461

we are not in a position to mandate a new requirement concerning waiver of one's right to testify. Thus, in line with *Albright,* we consider the totality of the record in deciding whether [the defendant] appropriately waived his right to testify." *Simpson,* 185 Wis. 2d at 779; *see also Wilson,* 179 Wis. 2d at 672 n. 3.

¶ 39. In light of the U.S. Supreme Court's decision in *Rock,* as well as the court of appeals' decisions in *Simpson* and *Wilson,* we affirm that a criminal defendant's constitutional right to testify on his or her behalf is a fundamental right. Therefore, we now examine whether this fundamental right may be waived by a defendant's silence. With respect to the waiver of fundamental rights, such as the right to counsel and the right to a jury trial, this court has held that a circuit court must conduct a colloquy with the defendant. *State v. Anderson,* 2002 WI 7, 249 Wis. 2d 586, 638 N.W.2d 301; *State v. Klessig,* 211 Wis. 2d 194, 564 N.W.2d 716 (1997). In explaining the benefits of requiring a colloquy, we stated in *Klessig,*

> [W]e mandate the use of a colloquy in every case where a defendant seeks to proceed pro se to prove knowing and voluntary waiver of the right to counsel. Conducting such an examination of the defendant is the clearest and most efficient means of insuring that the defendant has validly waived his right to the assistance of counsel, and of preserving and documenting that valid waiver for purposes of appeal and postconviction motions. Thus, a properly conducted colloquy serves the dual purposes of ensuring that a defendant is not deprived of his constitutional rights and of efficiently guarding our scarce judicial resources. We hope that our reaffirmation of the importance of such a colloquy will encourage the circuit courts to continue their vigilance in employing such examinations.

*Klessig,* 211 Wis. 2d at 206.

¶ 40. Since we deem that a criminal defendant's right to testify is a fundamental right, we conclude in line with *Anderson* and *Klessing,* that a circuit court should conduct a colloquy with the defendant in order to ensure that the defendant is knowingly and voluntarily waiving his or her right to testify. We have stated that "the decisions whether to waive the right to an appeal, the assistance of counsel, or to be tried by a jury, are so fundamental to the concept of fair and impartial decision making, that their relinquishment must meet the standard set forth in *Johnson v. Zerbst,* 304 U.S. 458 (1938). That is, the waiver must be 'an intentional relinquishment or abandonment of a known right or privilege.' " *Albright,* 96 Wis. 2d at 130–31 (quoting *Johnson,* 304 U.S. at 464). This same rationale applies to the fundamental right of a criminal defendant to testify on his or her behalf.

¶ 41. We recognize that only a minority of jurisdictions impose an affirmative duty on circuit courts to conduct an on-the-record colloquy to ensure that a criminal defendant is knowingly, intelligently, and voluntarily waiving his or her right to testify.[9] Many jurisdictions do not require circuit courts to engage in a colloquy based on concerns regarding trial strategy and the integrity of the attorney-client relationship.[10] Although these are valid concerns, they might be somewhat alleviated by the method employed by the circuit court in conducting a colloquy. For example, the colloquy should be a simple and straightforward exchange

---

[9] Michele C. Kaminski, Annotation, *Requirement that Court Advise Accused of, and Make Inquiry with Respect to, Waiver of Right to Testify,* 72 A.L.R. 5th 403, 418 (1999).

[10] *Id.*

between the court and the defendant outside the presence of the jury. Furthermore, these same concerns could be raised with respect to other fundamental rights, such as the right to a jury trial; however, we have deemed that because of their fundamental nature, there is sufficient justification to require an on-the-record colloquy.

¶ 42. We anticipate that requiring circuit courts to conduct an on-the-record colloquy to ensure that a criminal defendant is making a knowing, intelligent, and voluntary waiver of his or her right to testify will not be significantly burdensome. Even the State concedes that a colloquy would be beneficial to the criminal justice system and that the practice is already well-accepted and implemented in the circuit courts. Thus, the State agrees that mandating, as opposed to recommending, a colloquy would not likely create an additional burden on the circuit courts.

¶ 43. Accordingly, in order to determine whether a criminal defendant is waiving his or her right to testify, a circuit court should conduct an on-the-record colloquy with the defendant outside the presence of the jury. The colloquy should consist of a basic inquiry to ensure that (1) the defendant is aware of his or her right to testify and (2) the defendant has discussed this right with his or her counsel.

¶ 44. In this case, the circuit court did not conduct an on-the-record colloquy to ensure that Weed knowingly and voluntarily waived her right to testify. Notwithstanding the lack of a colloquy, we conclude that Weed knowingly, intelligently, and voluntarily waived

464

her right to testify based on our review of the record and the evidence presented at the post-conviction hearing.

¶ 45. At the post-conviction hearing, Weed's trial counsel testified that he and Weed had discussed whether Weed should testify on several occasions. Her trial counsel testified that although he had advised Weed not to testify, he also made very clear that she had the right to testify, and that it was her choice. Weed's trial counsel claimed that he believed Weed understood her constitutional rights. In support of his contention, he noted that at the insanity phase of the trial, Weed chose to waive her right to a jury trial against his advice.

¶ 46. In contrast, Weed testified at the post-conviction hearing that she thought that she couldn't disagree with her attorney and that she was never informed of her right to testify. Weed claimed that even though she was emotional during the trial, she still could have told her story. During the trial, Weed stated in a colloquy with the circuit court in waiving her right to a jury trial, that the psychotropic medications she was taking were beneficial and did not prevent her from intellectually functioning and understanding her right to a jury trial. Weed now argues that she did not understand that she had a right to testify due to the medications she was taking and her rough emotional state. Upon reviewing the record, we agree with the circuit court that Weed knowingly, intelligently, and voluntarily waived her right to testify based on the choices made by Weed during the trial, including waiving her right to a jury trial against her attorney's advice, her interaction with the circuit court throughout the trial, and the testimony presented at the post-conviction hearing.

465

¶ 47. Although we conclude that Weed waived her right to testify based on the record and the evidence presented at the post-conviction hearing, we decline to determine whether a post-conviction hearing would always be sufficient to ensure that a criminal defendant has waived his or her right to testify. Since Weed was provided an adequate remedy from the post-conviction hearing and the parties did not fully brief the issue of remedy, we do not decide the appropriate remedy if a circuit court fails to conduct an on-the-record colloquy with a criminal defendant to ensure that the defendant is waiving his or her right to testify. As we have stated before, "[s]uch a determination should be made with the benefit of briefs and argument on the merits by parties who take adverse positions." *State ex rel. Nichols v. Litscher,* 2001 WI 119, ¶ 31, 247 Wis. 2d 1013, 635 N.W.2d 292 (citing *Sopha v. Owens-Corning Fiberglas Corp.,* 230 Wis. 2d 212, 244, 601 N.W.2d 627 (1999)).

¶ 48. In sum, we conclude that the circuit court did not erroneously exercise its discretion in admitting the hearsay statement made by Michael under the recent perception exception to the hearsay rule. We also conclude that the hearsay statement did not violate Weed's right to confrontation, but even if it did, the error was harmless. Consequently, Weed was not denied the effective assistance of counsel because admission of the statement was not prejudicial. Finally, we conclude that the constitutional right of a criminal defendant to testify on his or her behalf is a fundamental right; therefore, waiver of the right to testify requires that a circuit court conduct an on-the-record colloquy. Despite the lack of a colloquy in this case, we conclude that Weed knowingly, intelligently, and voluntarily waived

466

her right to testify based on our review of the record and the evidence presented at the post-conviction hearing.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 49. ANN WALSH BRADLEY, J.

*(concurring).* Because I believe that the admission of Michael's statement sub silencio overrules precedent, lacks foundation, and violates Weed's constitutional right to confrontation, I cannot join the majority. Nevertheless, I concur because I agree with the majority that the error in admitting the statement is harmless in this case. What is not harmless, however, is that the majority broadens a hearsay exception to such an extent that its foundational requirements are rendered meaningless.

¶ 50. Wisconsin is one of only a few states that has adopted the exception for statements of recent perception. Of those few that have adopted it, Wyoming's exception applies only in civil cases and New Mexico's exception has since been repealed altogether. Wyo. Stat. R. Evid. Rule 804(b)(5) (2003); *State v. Ross,* 919 P.2d 1080, 1086–87 (N.M. 1996). Thus, Wisconsin stands only with Hawaii and Kansas in applying this exception in criminal cases.

¶ 51. When adopting the federal rules of evidence, Congress rejected the proposal to include the new exception because of "great potential breadth" and its inadequate guarantees of trustworthiness:

> The [House Judiciary] Committee eliminated [the proposed statement of recent perception exception] as creating a new and unwarranted hearsay exception of great potential breadth. The Committee did not believe that statements of the type referred to bore sufficient guarantees of trustworthiness to justify admissibility. ·

H.R. Rep. No. 93–650 (1973), reprinted in 1974
U.S.C.C.A.N. 7075, 7080.

¶ 52. I share the concern of overbreadth in the application of this exception. It must be narrowly applied.

¶ 53. The exception is unlike other hearsay exceptions where the declarant is unavailable, such as statements under belief of impending death (§ 908.045(3)) and statements against interest (§ 908.045(4)), in which the circumstances and type of statements inherently contain strong guarantees of trustworthiness. The lack of trustworthiness involved with the exception for statements of recent perception is evident from the reluctance of other jurisdictions to adopt it.

¶ 54. Apparently, it is this same reluctance that caused the court in *State v. Stevens,* 171 Wis. 2d 106, 119, 490 N.W.2d 753 (1992), to declare that corroboration is necessary when evaluating whether to admit hearsay under the exception for statements of recent perception:

> Corroboration is the key to reliability of a statement coming under [the exception for statements of recent perception]. . . . Reliability depends on the possibility of corroborating the declarant's statement.

According to one treatise on Wisconsin evidence, corroboration poses a special problem for the introduction of hearsay testimony. Ralph Adam Fine, *Fine's Wisconsin Evidence,* § 908.045(2), at 319 (2002). The treatise notes that " 'Corroboration is the key to reliability of a statement coming under' Rule 908.045(2)." *Id.* (quoting *Stevens,* 171 Wis. 2d at 119).

¶ 55. The majority ignores the language in *Stevens* regarding the requirement that there be corroboration. It allows for the admission of the statement

without any corroboration whatsoever, and in doing so, sub silencio overrules *Stevens.*

¶ 56. In this case, the hearsay involved the testimony of the Fuerbringers that Michael made a statement to the effect that he had removed the bullets from his gun. The majority notes Weed's argument that the statement should be excluded because there was no corroborating evidence, but then fails to address it. Majority op., ¶ 5. The failure to do so is not surprising because it appears that the State did not offer any evidence to corroborate the hearsay statement. Under *Stevens,* this lack of corroboration in and of itself makes the statement inadmissible. *See Stevens,* 171 Wis. 2d at 119.

¶ 57. In addition, it is not admissible because it fails to meet the foundational requirements. The requirements necessary to satisfy the exception for statements of recent perception are correctly set forth in ¶ 14 of the majority opinion: the statement must (1) be made in good faith with no contemplation of pending or anticipated litigation, (2) relate to a recently perceived event, and (3) be made while the declarant's recollection is clear.

¶ 58. The precise statement at issue is: "that's the reason I took the bullets out of the .357." I conclude that the statement is ambiguous in meaning and uncertain in time.

¶ 59. Michael did not tell the Fuerbringers when or what even caused him to remove the bullets and it is not clear from the circumstances when the alleged removal took place. Because the timing of the event is uncertain, the State failed to demonstrate that the statement describes a recent perception.

¶ 60. The majority discusses the testimony of the Fuerbringers in which they state their assumption that

Michael took the bullets out of the gun because of Weed's suicide attempt eight days prior to the statement being made. According to the majority, it therefore "appears" that the event described in the statement occurred within eight days. However, the assumptions of the Fuerbringers are insufficient to justify a conclusion that the State demonstrated recency.

¶ 61. This case is similar to *Tim Torres Enterprises, Inc. v. Linscott,* 142 Wis. 2d 56, 78, 416 N.W.2d 670 (Ct. App. 1987), which involved the introduction of hearsay under the exception for statements of recent perception. The court of appeals determined that the party who sought to introduce the hearsay failed to reliably demonstrate when the perceived event occurred. *Id.* The court therefore concluded that the statement did not qualify for the hearsay exception. *Id.*

¶ 62. Similarly, in this case, the majority acknowledges that the Fuerbringers did not know when the alleged removal of the bullets occurred. According to the majority, the Fuerbringers made a "reasonable" assumption that the removal was in response to Weed's suicide attempt eight days before. Majority op., ¶ 18. There are, however, other assumptions which are also reasonable.

¶ 63. Weed notes other things that Michael could have been referring to when he stated "that's the reason I took the bullets out of the .357": he could have been referring to Patricia's angry state of mind, to her consumption of alcohol, or to their argumentative history, any of which may have provided a reason to unload the gun. As a result of this ambiguity, the assumptions of the Fuerbringers do not reliably meet the required foundation that the event be recently perceived.

¶ 64. Further, given that the purpose of his statement was to criticize his wife and that it was made in

response to her humiliating comments, it is doubtful whether it meets the "good faith" necessary to establish the foundation for admission. Likewise, it is questionable whether the statement was made under circumstances which meet that foundational requirement that the declarant's recollection must be clear. The majority acknowledges that "Michael's mental state might have been affected by having a few beers." Majority op., ¶ 27.

¶ 65. Although it is unfortunate that the majority sub silencio overrules *Stevens* and incorrectly applies these facts to the foundational requirements for admissibility, the most problematic part of the majority's evidentiary analysis is that it broadens the exception to such an extent as to render the foundational requirements meaningless.

¶ 66. As noted above, Congress rejected this proposed new rule of evidence not only because it lacked sufficient reliability, but also out of a fear of its "great potential breadth." The majority employs an ardently criticized standard of admissibility and in doing so, not only unwisely broadens the exception, but essentially blows it wide open. In describing this standard, a treatise observes that "[n]early any articulated thought meets the test." Daniel D. Blinka, *Wisconsin Practice: Evidence,* § 8045.2, at 711.

¶ 67. The majority in ¶ 19 applies the *Kluever* standard of admissibility. The declarant in that case suffered a severe head injury and was rendered unconscious for a substantial period of time but for "islets of memory." *Kluever v. Evangelical Reformed Immanuels Congregation,* 143 Wis. 2d 806, 810–811, 422 N.W.2d 874 (1988). Since the declarant possessed an "amorphous" concept of time, the court determined that the "mere passage of time" is not controlling and that "a

471

determination regarding recency of perception depends on the particular circumstances of the case . . . ." *Id.* at 813.

¶ 68. In discussing the standard set forth in *Kluever,* one commentator warns that if broadly applied, the foundational requirements are rendered meaningless:

> As a standard of admissibility, this formulation fails to provide any meaningful yardstick for determining "recent perception." Nearly any articulated thought meets the test. The holding should be understood as applying only to cases where expert medical testimony supports a finding that the declarant has "islets" of accurate memory.

Blinka, *Wisconsin Practice: Evidence,* § 8045.2, at 711.

¶ 69. Based on the above analysis, I conclude that the hearsay does not meet the exception for statements of recent perception. There is no corroboration of the statement pursuant to *Stevens* and it fails to meet the foundational requirements. Therefore, it should not have been admitted under the rules of evidence.

¶ 70. In addition, the admission of the hearsay violated Weed's constitutional right to confrontation. The hearsay rule and the confrontation clause protect similar values and stem from the same roots. *White v. Illinois,* 502 U.S. 346, 352–53 (1992). Yet, they are distinct doctrines and the confrontation clause prohibits the use of statements that would be permitted under the hearsay rule:

> Although the confrontation clause and the hearsay rule are designed to protect similar values, they are not identical. More to the point, the hearsay rule generally permits a wider array of statements than the confrontation clause.

Blinka, *Wisconsin Practice: Evidence,* § 802.3, at 575.

¶ 71. Analysis under the confrontation clause includes an examination of the totality of the circumstances that surround the making of the statement to determine whether the evidence is so trustworthy that cross-examination would have added little to its reliability. *Idaho v. Wright,* 497 U.S. 805, 820–821 (1990). This case does not meet that test.

¶ 72. As noted above, it is unclear when the alleged removal of the bullets occurred. The majority accepts the assumptions of the Fuerbringers that Michael was referring to Weed's suicide attempt. However, this is not clear and cross-examination would be helpful to clarify the reason for and the timing of the removal.

¶ 73. In addition to clarifying the ambiguities that exist, cross-examination in this case would test Michael's candor and accuracy in making the statement. The fact that the purpose of Michael's statement was to criticize his wife and not to recount an event calls into question its accuracy. This is especially true because the statement was made during an argument and after he had consumed the proverbial "few beers." Because cross-examination would have meaningfully tested the reliability of the statement, it fails the test under the confrontation clause enunciated in *Idaho v. Wright.*

¶ 74. For the foregoing reasons, I conclude that the statement was inadmissible both under the rules of evidence and under the confrontation clause. I concur in the mandate because, for the reasons set forth by the majority, I conclude that the admission of the hearsay was harmless error under *Chapman v. California,* 386

473

U.S. 18, 20–26 (1967) (the court must be able to declare beyond a reasonable doubt that the error did not contribute to the verdict).

¶ 75. The majority's conclusion of harmless error makes the expansion of the exception for statements of recent perception unnecessary. Additionally, it seems unwarranted because the statement is one that the majority describes as having "low probative value." Majority op., ¶ 32.

¶ 76. Nevertheless, for whatever reasons, the majority apparently feels compelled to admit a statement which fails the foundational requirements, violates Weed's right to confrontation, and sub silencio overrules *Stevens*. Most problematic, however, is that for the future it broadens the exception to such an extent that "nearly any articulated thought meets the test." Accordingly, I respectfully concur.

¶ 77. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this concurrence.