PER CURIAM.
¶1 Antonio D. Shannon appeals from orders denying his WIS. STAT. § 974.06 (2017-18)[1] original and supplemental postconviction motions. He argues that he is entitled to a new trial (1) because his postconviction counsel provided ineffective assistance by failing to challenge the effectiveness of trial counsel's performance, (2) based on newly discovered evidence, and (3) in the interest of justice. For the reasons that follow, we affirm.
¶2 Bennie Smith, K.S., C.M., and Smith's cousin, C.T., were together in a parked car, when Shannon pulled up in a car driven by his brother, Terry. A gun battle erupted almost immediately. Smith was killed and the passengers in his car were injured. Unscathed, the Shannon brothers jetted away and a short time later were observed torching their vehicle. Following a seven-day joint jury trial, both were found guilty of first-degree intentional homicide and discharging a firearm from a vehicle. Neither brother testified at trial.
¶3 On direct appeal, Shannon, by counsel, argued that the circuit court erroneously excluded as hearsay testimony offered by a third party that the victim said he was "gonna fuck up Terry." We affirmed Shannon's convictions, concluding that although exclusion of the statement was error, it was harmless because the jury heard testimony which supported an inference that Smith and his passengers "were looking for Terry and initiated the shootout when he drove up," thereby functionally conveying the same theory of self-defense. State v. Shannon , No. 2013AP130-CR, unpublished slip op. at ¶10 (WI App Nov. 13, 2013). We observed that in addition to evidence of Smith's aggression, the jury heard testimony suggesting that K.S. or C.T. killed Smith. Id. , ¶13. The jury "either did not believe some, or all, of that testimony or found it less compelling than evidence demonstrating that the Shannons literally came gunning for Bennie and his companions." Id. The latter evidence included the consistent testimony of five witnesses who said that the scene before the shooting was "relaxed and friendly," that Smith did not appear "jumpy or nervous," and that the shooting began when the Shannons' car pulled up. Id. , ¶13.
¶4 Shannon filed a postconviction motion under WIS. STAT. § 974.06 alleging that trial counsel provided ineffective assistance by failing to (1) adequately investigate Shannon's self-defense claim, (2) prepare him to testify at trial, and (3) properly advise him whether to testify. The motion further alleged that postconviction counsel was ineffective for failing to raise this claim as part of Shannon's direct appeal. Following an evidentiary hearing, the circuit court determined that neither trial nor postconviction counsel provided ineffective assistance, and it denied Shannon's § 974.06 motion.
¶5 Shannon appealed. Upon his motion, we remanded the case to the circuit court so that Shannon could file a supplemental postconviction motion alleging newly discovered evidence. The circuit court heard and denied Shannon's supplemental claim. Shannon appeals the denial of both postconviction motions.
Shannon is not entitled to a new trial based on the ineffective assistance of counsel.
¶6 At trial and before the close of evidence, counsel informed the circuit court that Shannon would not testify. The circuit court conducted an on-the-record colloquy with Shannon about his right to testify. Shannon told the court that he understood he had a constitutional right to testify or not to testify and knew that the decision was "entirely for [him] to make." Shannon also confirmed that no one had made any threats or promises to influence his decision and that he had "the opportunity to discuss [his] decision on whether to testify or not with [trial counsel]." Shannon told the court he had decided "Not to testify."
¶7 Shannon acknowledges that he waived his right to testify in a proper colloquy on the record at trial, thus satisfying the requirements of State v. Weed , 2003 WI 85, ¶¶40-43, 263 Wis. 2d 434, 666 N.W.2d 485 (circuit courts must engage criminal defendants who decide not to testify in a colloquy to determine whether their waiver of the fundamental right to testify at trial is voluntary and intelligent). However, he maintains that trial counsel provided ineffective assistance by advising him not to testify at trial.
¶8 Absent a sufficient reason, a defendant is procedurally barred from raising claims in a WIS. STAT. § 974.06 postconviction motion that could have been raised in a prior postconviction motion or appeal. See § 974.06(4) ; State v. Escalona-Naranjo , 185 Wis. 2d 168, 181-86, 517 N.W.2d 157 (1994). Here, Shannon asserts as his sufficient reason postconviction counsel's ineffectiveness. See State v. Romero-Georgana , 2014 WI 83, ¶36, 360 Wis. 2d 522, 849 N.W.2d 668. A defendant asserting the ineffective assistance of counsel must demonstrate that counsel performed deficiently and that the deficient performance was prejudicial. Strickland v. Washington , 466 U.S. 668, 687 (1984). To prove deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. To prove prejudice, the defendant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. We apply a mixed standard of review. State v. Mayo , 2007 WI 78, ¶32, 301 Wis. 2d 642, 734 N.W.2d 115. The circuit court's factual findings are upheld unless clearly erroneous. Id. "Whether counsel's performance was deficient and prejudicial to his or her client's defense is a question of law that we review de novo." Id.
¶9 The circuit court's on-the-record Weed colloquy defeats Shannon's ineffective assistance of counsel claim, especially when coupled with evidence adduced at the postconviction hearing. Based on testimony at the Machner[2] hearing, the circuit court found that trial counsel went over the pros and cons of whether or not to testify with Shannon, and that Shannon made the ultimate decision to waive his right to testify: "[Trial counsel] gave that opinion, but again, [trial counsel] always made it clear that the ultimate decision was Mr. Shannon's." Indeed, Shannon concedes that he understood at the time of trial that the decision of whether or not to testify was his alone to make. Downplaying the significance of the court's on-the-record colloquy, Shannon now suggests that trial counsel's advice somehow improperly tainted his decision not to testify. We reject Shannon's attempts to avoid responsibility for a difficult but personal decision by laying blame at trial counsel's feet.
¶10 Nor do Shannon's complaints about the adequacy of the information provided by trial counsel demonstrate deficient performance. Trial counsel's Machner hearing testimony included that he pursued as alternative defenses that Shannon was not the cause of Smith's shooting death or that Shannon was acting in self-defense. He testified that he worked with Terry Shannon's trial counsel on strategy and met with Shannon multiple times both before and during the seven-day trial to develop strategy based on the evidence that came in. Trial counsel testified that whether the defendant testifies is "always an issue" when raising self-defense, and that "[y]ou have to look at everything and make a judgment call, and all that goes into what I talk to the client about." Trial counsel testified that he had "argued self-defense before where I didn't put clients on [the stand] and I have been successful at it."
¶11 Based on the record and the evidence presented at the Machner hearing, the circuit court found that trial counsel discussed the pros and cons of testifying with Shannon and explained to Shannon "that he could not put him on the stand just to testify about self-defense" and that "there were a number of issues that Mr. Shannon would have been questioned on, including the fact that he fled the State with his brother, including the fact that they burned out the car that they were in when the shooting took place, all of which made him look guilty." The court found that trial counsel "told him to keep thinking about it" so he could "make the decision at the last minute depending upon how the evidence went in," and that if Shannon had decided to testify, counsel "would then have prepared Mr. Shannon to testify on his self-defense theory."
¶12 We accept the circuit court's factual findings and credibility determinations and conclude that trial counsel's performance was objectively reasonable. We will not by hindsight second-guess trial counsel's rational conduct. Trial counsel did not perform deficiently. As such, postconviction counsel's failure to raise this claim does not constitute ineffective assistance of postconviction counsel. See State v. Ziebart , 2003 WI App 258, ¶15, 268 Wis. 2d 468, 673 N.W.2d 369.
Shannon is not entitled to a new trial based on newly discovered evidence.
¶13 Shannon's supplemental WIS. STAT. § 974.06 postconviction motion alleged the existence of newly discovered evidence. At an evidentiary hearing on the motion, an inmate named Duanne Townsend testified that he met C.T. in prison around 2008. Townsend was serving a life sentence. On one occasion, he was sitting with C.T. and two other inmates, Eugene Sills and Darquice Streeter, when C.T. described a shooting involving "the Shannon brothers." According to Townsend, C.T. stated that the shooting had initiated not from the Shannons' car, but from the car C.T. was in with his cousin Smith. Townsend also stated that C.T. said that he had shot Smith in the head "by accident," and called himself "bogus" because he let "Shannon and his brother do time for something that he actually did." Townsend said C.T. "started laughing." At the time, Townsend did not know the Shannons, but he met Terry Shannon in 2012 and realized he was one of the "Shannon brothers" from C.T.'s story. However, Townsend did not tell anyone else about what C.T. said until he contacted Shannon's attorney in the summer of 2017.
¶14 Sills testified that he knew both C.T. and Streeter, but that he did not know or recognize Townsend, and that he did not know anything about Smith's homicide. C.T. testified that he knew and was housed with Townsend, but that they never discussed Smith's shooting because it was "a personal matter," and because C.T. did not "even know the guy like that": "[Townsend] was in a different gang, so we didn't communicate as much." C.T. also testified that he knew Streeter and Sills from prison but that he would not have discussed Smith's death with them. C.T. also testified that he would not "have discussed it in a joking manner" because it was his cousin and "it's not a laughing or joking matter." C.T. definitively stated that he knew "for sure that I never discussed this matter with" Townsend.
¶15 The circuit court denied Shannon's supplemental postconviction motion. The court agreed that Townsend's affidavit testimony was new evidence and that it was material, but suggested it was cumulative, noting that the jury heard similar evidence at trial, including that the fatal shot came from inside Smith's car. The circuit court determined that the jury "either did not believe some or all of the testimony or found it less compelling than evidence demonstrating that the Shannons literally came gunning for [Smith] and his companions. So this alleged conversation in combination with all of the other testimony does not justify a new trial. It does not create a reasonable probability of a different result." The circuit court also addressed Townsend's statement in light of the evidence presented at trial, noting that there was testimony from numerous impartial witnesses implicating Shannon in the shooting along with evidence evincing the Shannons' consciousness of guilt. The circuit court concluded that "based on all that testimony, this one alleged conversation, I repeat, does not create a reasonable probability of a different result, and the motion is denied."
¶16 A defendant seeking a new trial based on newly discovered evidence must prove by clear and convincing evidence all of the following: (1) the evidence was discovered after trial, (2) "the defendant was not negligent in seeking the evidence, (3) the evidence is material to an issue in the case," and (4) the evidence is not merely cumulative to the evidence that was introduced at trial. State v. Avery , 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60. If all four factors are proven, "then it must be determined whether a reasonable probability exists that had the jury heard the newly-discovered evidence, it would have had a reasonable doubt as to the defendant's guilt." State v. Plude , 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42. A trial court's decision whether to grant or deny a newly-discovered evidence motion is reviewed for an erroneous exercise of discretion. State v. Edmunds , 2008 WI App 33, ¶14, 308 Wis. 2d 374, 746 N.W.2d 590.
¶17 Shannon's newly discovered evidence claim fails. Even if Townsend's testimony is new and material, Shannon has failed to show that it is not merely cumulative, given that the jury heard and did not believe evidence that someone else shot Smith. See Avery , 345 Wis. 2d 407, ¶25. In fact, the jury specifically heard testimony that C.M. said that C.T. killed Smith.
¶18 Even if we assume that Townsend's statement satisfies the four-pronged test for newly discovery evidence, there is no reasonable possibility its admission at trial would have led to Shannon's acquittal. Townsend's proffered testimony is of questionable value, given that Townsend did not witness the shooting; that he is serving a life sentence; that Sills, who was also allegedly present, does not remember C.T.'s ever discussing Smith's shooting, let alone admitting that he killed Smith; and that C.T. vehemently denies that he would have ever talked to Townsend about Smith's death. Additionally, Townsend's statement would not have sufficiently impacted the plethora of other evidence presented at trial supporting the jury's guilty verdict. See Plude , 310 Wis. 2d 28, ¶33. When viewed in light of the evidence presented at trial, we agree with the circuit court that this "one alleged conversation" between Townsend and C.T. while in prison "does not create a reasonable probability of a different result."
Shannon is not entitled to a new trial in the interest of justice.
¶19 Shannon argues that he is entitled to a new trial in the interest of justice "[r]egardless of whether prior counsel are deemed ineffective" because "the absence of [Shannon's] testimony" along with "C.T.'s corroborating admission to Townsend that those in Smith's car shot first deprived [Shannon] of the evidence necessary to establish the self-defense that was his only viable defense to the charges." Under WIS. STAT. § 752.35, this court has authority to grant a new trial in the interest of justice if it appears that (1) the real controversy has not been fully tried or (2) it is probable that justice has for any reason miscarried. Reversal in the interest of justice is exercised infrequently and reluctantly, see Avery , 345 Wis. 2d 407, ¶38, and only "in exceptional cases," see State v. Kucharski , 2015 WI 64, ¶23, 363 Wis. 2d 658, 866 N.W.2d 697.
¶20 Shannon argues that the real controversy was not fully tried. He relies on State v. Cuyler , 110 Wis. 2d 133, 327 N.W.2d 662 (1983), where the Wisconsin Supreme Court granted a new trial in the interest of justice because two police officers were excluded from testifying about the defendant's character for truthfulness. We agree with the State that Shannon's reliance is misplaced. First, the testimony at issue in the instant case is not the credible, disinterested testimony of third parties regarding the defendant's character, but instead is Shannon's own self-interested testimony about the events surrounding the shooting and the third-party testimony of Townsend. Second, Shannon's testimony was not "excluded." Rather, he waived his constitutional right to testify after a colloquy with the circuit court. A defendant may not waive the right to testify in order to avoid the pitfalls of cross-examination regarding detrimental facts, and then, after being convicted, argue that his or her valid waiver provides a basis to receive a new trial. We reject Shannon's attempt to make an end-run around the Strickland standard by framing his argument as an interest-of-justice claim.
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).