STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert BINTZ, Defendant-Appellant.†

Court of Appeals

*No. 01–2670–CR. Submitted on briefs June 18, 2002.—Decided July 9, 2002.*

2002 WI App 204

(Also reported in 650 N.W.2d 913.)

---

† Petition to review denied 10-21-02.

---

177

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Elizabeth Davendish-Sosinski* of Pewaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Christian R. Larsen*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Robert Bintz appeals a judgment of conviction for first-degree murder, party to a crime, contrary to Wis. Stat. §§ 940.01(1) and 939.05 (1987–88)[1] and an order denying postconviction relief. Bintz argues the trial court erred by admitting the statements of his brother David in violation of the hearsay rule and the Confrontation Clause and seeks a new trial. We determine the court properly admitted David's statements and affirm the judgment and order.

## BACKGROUND

¶ 2. Sandra Lison, a bartender at the Good Times Bar in Green Bay, disappeared in August 1987. Several days after her disappearance, Lison's body was found in the Machickanee Forest. As part of the investigation, Green Bay Police Detective Lawrence Pamperin took a statement from David Bintz. In the statement, Bintz said he had driven his brother, Robert, and a friend to the Good Times Bar to pick up a case of beer on the night Lison disappeared. Robert and the friend went in to buy the beer while David waited in the car. After returning home, David became irritated when he found out the beer had cost more than he expected. He called the Good Times and threatened to blow up the bar. David then said he fell asleep. No one was charged with Lison's murder and the investigation remained open.

¶ 3. In 1998, David was incarcerated at the Oshkosh Correctional Institution for an unrelated crime. In February, David's cellmate, Gary Swendby, began to notice David was talking in his sleep and having night-

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

mares in which he would scream about someone killing a woman, shouting among other things "make sure she's dead." Swendby asked David about his nightmares and David eventually said he had been involved in Lison's murder. He said he and Robert decided to rob the bar after being overcharged for the beer. After the robbery, they realized Lison would be able to identify them, so they decided to kill her. David said he had repeatedly told his brother to make sure Lison was dead. David then said he and Robert put Lison in the trunk of their car, and drove "somewhere up north" to dispose of the body.

¶ 4. Swendby reported David's confession to prison officials, who contacted the Green Bay police department. In April, detective Robert Haglund took statements from Swendby and other inmates regarding David's nightmares and statements he had made about Lison's murder. Following these interviews, Haglund presented David with Swendby's statement. David said Swendby's statement was true, and then provided further information about Robert hitting and strangling Lison. David said he did not kill anyone. David and Robert were charged with Lison's murder.

¶ 5. The brothers were tried separately. In May 2000, a jury convicted David of first-degree murder, party to a crime, and the court sentenced him to life in prison. Swendby testified at David's trial. In July 2000, the court convicted Robert and sentenced him to life in prison as well. Swendby did not testify at Robert's trial because Swendby died in an automobile accident between the trials. Over Robert's objection, the court admitted Swendby's testimony from David's trial and the brothers' preliminary hearing. The court also allowed Pamperin to testify about David's 1987 statement. Because David invoked his Fifth Amendment

privilege against testifying, the court found him un-available and admitted his statements to Swendby and Pamperin as statements against interest pursuant to Wɪs. Sᴛᴀᴛ. § 908.045(4). In addition, the court determined Swendby had become unavailable by his death and admitted his prior testimony according to § 908.045(1). The court also concluded this evidence did not violate Robert's rights under the Confrontation Clause. After the court denied his motions for postconviction relief, Robert appeals.

## STANDARD OF REVIEW

¶ 6. Robert argues the trial court erred by admitting David's statements to Swendby and Pamperin because they were hearsay and their admission violated his confrontation rights. A trial court's decision to admit a hearsay statement is a discretionary one, and we will not reverse the trial court's decision "unless the record shows that the ruling was manifestly wrong and an [erroneous exercise] of discretion." *State v. Moats*, 156 Wis. 2d 74, 96, 457 N.W.2d 299 (1990). Whether the admission of hearsay violates a defendant's constitutional right of confrontation, however, is an issue subject to de novo review. *State v. Webster*, 156 Wis. 2d 510, 517–22, 458 N.W.2d 373 (Ct. App. 1990).

¶ 7. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Cᴏɴsᴛ. amend. VI. This clause was made applicable to state criminal prosecutions in *Pointer v. Texas*, 380 U.S. 400 (1965). While the

admission of any hearsay statement against a criminal defendant would appear to violate the literal terms of the clause, the United States Supreme Court has consistently held the clause does not always prohibit this practice. *Idaho v. Wright*, 497 U.S. 805, 812–13 (1990). In order for a hearsay statement to be admitted against a criminal defendant it must either (1) fall within a firmly rooted hearsay exception; or (2) contain particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).

## DISCUSSION

### A. The 1987 statement

¶ 8. We will first address Robert's claim the court erred in admitting David's 1987 statement to the police because it was hearsay. The court admitted the statement as a statement against interest under Wis. Stat. § 908.045(4).[2] This hearsay exception requires the declarant to be unavailable. Here, the court determined

---

[2] Wisconsin Stat. § 908.045(4) provides:

**Hearsay exceptions; declarant unavailable.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(4) Statement against Interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the

David was unavailable because he invoked his Fifth Amendment right against self-incrimination as provided in Wis. Stat. § 908.04(1)(a).

¶ 9. Robert argues those portions of the 1987 statement which inculpate him by placing him at the scene of the murder should have not been admitted because they were not against David's interest. In support, Robert relies on *Williamson v. United States*, 512 U.S. 594 (1994), in which a plurality of the Supreme Court delineated the limits of the "against penal interest" hearsay exception.[3] The Court said the exception does not allow the admission of nonself-inculpatory statements made in generally self-inculpatory narratives. *Id.* at 600. While self-inculpatory statements are generally reliable, the Court noted one of the most effective ways to lie is to mix reliable statements with falsehoods. *Id.* at 599–600. The question is whether the statement was sufficiently against the declarant's interest that a reasonable person in his or her position would not have made the statement unless believing it to be true. *Id.* at 603–04. This question can only be answered by examining the surrounding circumstances. *Id.*

¶ 10. Here, Robert argues the parts of the statement placing him at the scene of the murder were inadmissible under *Williamson*. We disagree. Although *Williamson* says nonself-inculpatory statements are generally inadmissible, it does not establish a hard and

declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborated.

[3] In *Williamson v. United States*, 512 U.S. 594 (1994), the Court interpreted Fed. Rule Evid., 804(b)(3), the federal counterpart to Wis. Stat. § 908.045(4).

fast rule. The court noted, "Even the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor." *Id.* at 603. The trial court admitted the whole statement because it saw no attempt by David to shift the blame to Robert. We agree. David's statement is self-inculpatory. It places him at the scene of the murder, gives him a possible motive, and admits his threat to blow up the bar. At the time he gave the statement, however, David was not under arrest, nor was he told he was a suspect in the murder investigation. He did not attempt to blame his brother for anything, and nothing suggests he was trying to curry favor with the police. These circumstances suggest David was more likely to have been truthful about Robert's being at the bar that night. We cannot say the trial court erred by admitting David's statement under Wis. Stat. § 908.045(4).

¶ 11. This, however, does not end our inquiry. As noted, not all hearsay is admissible under the Confrontation Clause. Robert argues the court improperly determined this statement had guarantees of trustworthiness and relies on *Lilly v. Virginia*, 527 U.S. 116 (1999). In *Lilly*, two brothers and another man went on a robbery binge, during which one of them killed somebody. *Id.* at 120. After they were apprehended, the police interviewed the men separately. *Id.* One of the brothers, Mark, admitted his role in the robberies and his presence at the homicide. *Id.* at 121. The police told Mark unless he broke "family ties," he would wind up with a life sentence. *Id.* Mark then implicated his brother Benjamin in the murder. *Id.*

¶ 12. At Benjamin's trial, Mark invoked his Fifth Amendment privilege against testifying and the trial court admitted his statements to the police based on the

186

"against penal interest" exception to the Virginia hearsay rule. *Id.* at 121–22. The Supreme Court determined the admission of the statements violated Benjamin's rights under the Confrontation Clause. *Id.* at 123. It said "statement against interest" hearsay exceptions are not firmly rooted under the *Roberts* analysis. *Lilly*, 527 U.S. at 126–35. The Court also said the circumstances surrounding Mark's interview did not bear particular guarantees of trustworthiness because (1) Mark was in police custody for his involvement in serious crimes and his statements were made in the presence of governmental authority; (2) he was responding to leading questions that were not subject to contemporary cross-examination; (3) Mark had a natural motive to exculpate himself; and (4) he was under the influence of alcohol at the time of questioning. *Id.* at 139.

■

¶ 13. Here, Robert suggests David's situation is similar enough to Mark's that *Lilly* precludes the introduction of David's 1987 statement. We disagree. Robert contends David's statements are unreliable based on all the same reasons Mark's were, except for being under the influence of alcohol. While it is true David was interviewed at the police station, there is no evidence he was told he was a suspect. David was not in custody and there is no indication he was threatened with prosecution or asked leading questions. Finally, nothing in David's statement is especially inculpatory in respect to shifting blame toward Robert.

¶ 14. Robert also attempts to distinguish *State v. Murillo*, 2001 WI App 11, 240 Wis. 2d 666, 623 N.W.2d 187. In *Murillo*, Luis Murillo was arrested after a witness put him at the scene of a shooting. *Id.* at ¶¶ 2–3. During the interview, Luis said his brother Eddie had been the actual shooter. *Id.* at ¶ 5. Prior to

saying this, Luis had cried, prayed, paced, collapsed, and said he was afraid to testify against his brother. *Id.* at ¶ 4. At trial, Luis refused to testify. The court admitted his statement to the police as against his penal and social interest over Eddie's Confrontation Clause objection. We affirmed, holding Luis's actions and demeanor during the interview sufficiently established the reliability of his statement. *Id.* at ¶ 25. Although Eddie argued *Lilly* was applicable, we noted the only similarities between *Murillo* and *Lilly* was the fact Mark and Luis were brothers of the people they turned against. *Id.* at ¶ 26. We believe that is the case here as well. While Robert correctly notes this court saw little, if any, reason for Luis to shift blame in *Murillo*, we do not see any in David's 1987 statement to the police either. David was not in custody nor was he accused of any crimes. He was not being asked leading questions and did not attempt to shift blame to his brother. The trial court properly admitted David's statement to the police.

### B. The statements to Swendby

¶ 15. Robert also argues the trial court erred by admitting the transcripts of Swendby's testimony at the preliminary hearing and David's trial. Again, Robert attacks Swendby's testimony as inadmissible hearsay and as violative of his Confrontation Clause rights. We note Swendby's testimony presents a hearsay within hearsay problem, that is, David's confession to Swendby is hearsay, as is Swendby's prior testimony. WISCONSIN STAT. § 908.05 requires each of these levels of hearsay to meet an exception to the rule in order to be admissible. The trial court found David unavailable because of his right not to testify against himself, and determined his confession was a statement against interest. The court

188

then determined Swendby was unavailable because he had died, and admitted the transcripts as prior testimony. Wis. Stat. §§ 908.04(1)(d), 908.045(1).[4]

¶ 16. Robert argues the court's admission of David's statements to Swendby through prior transcripts resulted in an unfair trial and a denial of Robert's due process rights. He contends since he was unable to cross-examine either David or Swendby, his due process rights have been violated. While Robert admits Swendby was cross-examined at David's trial as well as the preliminary hearing, he argues this is inadequate. We disagree.

¶ 17. First, we agree with the trial court's resolution of the double hearsay issue. David was unavailable and his statement would tend to subject him to criminal liability. Further, the trial court correctly ruled Swendby was unavailable and properly admitted his former testimony. We are not persuaded by Robert's claim his limited cross-examination of Swendby at the preliminary hearing was inadequate. Preliminary hearing testimony is presumed to be reliable. *See State v. Bauer*, 109 Wis. 2d 204, 216, 325 N.W.2d 857 (1982).

---

[4] WISCONSIN STAT. § 908.045(1) provides:

**Hearsay exceptions; declarant unavailable.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) FORMER TESTIMONY. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of another proceeding, at the instance of or against a party with an opportunity to develop the testimony by direct, cross-, or redirect examination, with motive and interest similar to those of the party against whom now offered.

Simply because the hearing is limited to the issue of probable cause does not make preliminary hearing testimony inadmissible. *Id.* at 218. Our supreme court, citing *United States, ex rel. Haywood v. Wolff*, 658 F.2d 455 (7th Cir. 1981), noted "the Supreme Court has never said that the opportunity for cross-examination afforded at the preliminary hearing must be identical with that required at trial." *Id.*

¶ 18. Robert also argues the admission of Swendby's trial testimony was improper because Swendby's cross-examination by David's attorney had a different purpose and goal than Robert's would have. Robert argues because his defense was he had nothing to do with Lison's murder and David argued he saw the murder, but was not involved, David's interest in cross-examining Swendby was not similar enough to comply with WIS. STAT. § 908.045(1). We disagree. Robert's and David's interests must only be similar, not identical. *See State v. Hickman*, 182 Wis. 2d 318, 327, 513 N.W.2d 657 (Ct. App. 1994).

¶ 19. This case is akin to *State v. Barksdale*, 160 Wis. 2d 284, 466 N.W.2d 198 (Ct. App. 1991). In *Barksdale*, two defendants were tried separately for first-degree reckless homicide, party to a crime. *Id.* at 286–87. In between the trials, a key eyewitness died, and his testimony from the first trial was admitted at the second. *Id.* at 287. In affirming the trial court's decision, we noted the two defendants' interests in cross-examining the witness were very similar because it was immaterial who actually did the killing. *Id.* at 288–89. The same can be said for Robert and David. Because they were both charged as parties to a crime, it was irrelevant which one of them actually killed Lison. Their interests in cross-examining Swendby were very similar and meet the requirements of WIS. STAT. § 908.045(1).

¶ 20. Robert also argues the admission of Swendby's prior testimony violated his confrontation rights. We disagree. Viewing both levels of hearsay presented by admitting Swendby's testimony, we conclude they both meet the *Roberts* test. Looking first at Swendby's prior testimony, we note it falls under a firmly rooted hearsay exception and there do not appear to be any unusual circumstances suggesting it should be considered any less reliable. *See Bauer*, 109 Wis. 2d at 216.

¶ 21. David's statements to Swendby are not so cut and dried. Robert correctly argues the statements, as statements against interest, are not "firmly rooted" hearsay exceptions. *Lilly*, 527 U.S. at 126. He also contends they lack the guarantees of trustworthiness required by the *Roberts* test. Robert points to the circumstances surrounding the statements, primarily that they were made in prison to another prisoner. He argues this makes them wholly unreliable because they would actually reflect David's attempts to impress other prisoners. Robert also argues David's "sleep talk" statements are unreliable.

¶ 22. David's statements to Swendby are more reliable because they were made to a fellow prisoner. In comparison to *Lilly*, we note none of the factors that made Mark's statement inadmissible there are present here, most notably the lack of police involvement and motivation to exculpate himself. In fact, in *Lilly*, the Court noted the only exception to the general rule excluding accomplice confessions is *Dutton v. Evans*, 400 U.S. 74 (1970), which, as Chief Justice Rehnquist points out in his concurrence, involved a confession to a fellow inmate, not the police. *Lilly*, 527 U.S. at 132, 147 (Rehnquist, C.J., concurring). Confessions to fellow

191

inmates, like those to family and friends, "bear sufficient indicia of reliability to be placed before a jury without confrontation of the declarant." *Id.* at 147. As for admitting evidence of David's sleep talk, Robert makes no specific argument why this should be considered any less reliable than statements made while awake. The trial court's admission of Swendby's prior testimony did not violate Robert's confrontation rights.

*By the Court.*—Judgment and order affirmed.