STATE of Wisconsin, Plaintiff-Respondent,

v.

Glenn H. HALE, Defendant-Appellant.†

Court of Appeals

*No. 03–0417–CR. Submitted on briefs August 22, 2003.— Decided October 29, 2003.*

## 2003 WI App 238

(Also reported in 672 N.W.2d 130.)

---

† Petition to review granted 2-24-04.

---

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven D. Phillips*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. BROWN, J. Glenn H. Hale and coactor Robert L. Jones had separate trials, both resulting in guilty verdicts arising out of an armed robbery that left two people murdered. David Sullivan, a life-long friend of Hale's, was a witness in Jones's trial, but made himself unavailable for Hale's trial. The district attorney successfully persuaded the trial court to allow the admission of Sullivan's former testimony and Hale appeals, arguing that WIS. STAT. § 908.045(1) (2001–02),[1] the former testimony hearsay exception, is not "firmly rooted," there are no particularized guarantees of trustworthiness, the residual exception should not operate and Sullivan's testimony hurt his defense. We are convinced that *State v. Bintz*, 2002 WI App 204, 257 Wis. 2d 177, 650 N.W.2d 913, *review denied,* 2002 WI 121, 257 Wis. 2d 119, 653 N.W.2d 891 (Wis. Oct. 21, 2002) (No. 01–2670–CR), holds the former testimony hearsay exception to be "firmly rooted." While we question the holding in *Bintz*, we are bound by it and it dooms Hale's argument. Even if *Bintz* was not on the books and we were to hold that the exception is not "firmly rooted," Hale would be doomed anyway because Sullivan's testimony had particularized guarantees of trustworthiness.

¶ 2. On January 3, 2002, Hale was charged with two counts of first-degree intentional homicide, party to a crime, in violation of WIS. STAT. §§ 940.01(1)(a) and 939.05; three counts of conspiracy to commit armed robbery in violation of WIS. STAT. §§ 943.32(2) and 939.31; and one count of possession of a firearm by a

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

felon in violation of Wis. Stat. § 941.29(2m). The charges were based on allegations that on December 8, 2001, Hale and a separately tried co-actor, Jones, forced their way into a Kenosha apartment to rob the three occupants of drugs and money and that, in the process of doing so, Hale shot and killed Darrel Stone and Joshua Kressel.

¶ 3. At Hale's jury trial in July 2002, Mark Bernhardt testified that on December 8, 2001, he, Stone and Kressel were sitting in the living room of Stone's apartment watching television. Bernhardt heard a car pull into the adjacent driveway, and, about two minutes later, a male identifying himself as "Vinnie" knocked on the door of Stone's apartment. Not knowing anyone by that name, Stone did not initially open the door. When the knocking persisted, however, Stone opened the door about one-half inch. At this point, the door flew open, Bernhardt heard what sounded like a gunshot, and Stone dropped to his knees and put his hands in the air.

¶ 4. Bernhardt testified that two men then entered the apartment. Bernhardt identified the first man to enter as Jones. The other man initially stood just inside the doorway with what looked like a revolver. The gunman wore a ski mask, a hooded sweater and gloves, and was dressed completely in black. Bernhardt testified that he assumed the gunman was African-American because he did not see any white skin beneath the mask. He also testified that the gunman was small and was crouching down a bit as he leaned against the doorjamb.

¶ 5. Bernhardt testified that Jones then flipped over a table and demanded to know "where's the weed at," as the gunman fired a warning shot toward the ceiling. Kressel gave Jones the small amount of marijuana he had in his pocket. Jones then turned to

Bernhardt. When Bernhardt did not move fast enough, Jones picked him up by his hair. Bernhardt gave Jones his money and got back on the floor with his hands up in the air and his back to Jones. Bernhardt then heard two more gunshots. Looking over his shoulder, he saw the men leaving the apartment, and saw Kressel bleeding. He ran to the bathroom and called 911 on his cell phone. Bernhardt heard a car leaving, looked out the window, and saw what he believed to be a 1989 Chevy Beretta pulling out of the driveway. He testified that he had been around cars all his life and that when viewed from the side, a Corsica and a Beretta would have been basically indistinguishable.

¶ 6. One of the responding officers testified that both Kressel and Stone died at the scene. At trial, the parties stipulated that the gunshots caused the deaths of Stone and Kressel and that the shots were fired by a .44 magnum revolver that was recovered from a car Hale was driving when he was apprehended following a car chase more than five days later.[2]

¶ 7. It can be fairly stated that the rest of the State's case consisted of evidence designed to corroborate this historical background. Sullivan, a friend of Hale's since childhood who allegedly gave Hale the gun used in the murders, had testified at Jones's trial, which was held in May 2002. The State subpoenaed Sullivan

---

[2] On December 13, 2001, and the early morning hours of December 14, when police attempted to make a traffic stop of a rental car they had confirmed Hale was driving, Hale accelerated, with the officers in pursuit. Eventually, after a car chase involving twelve or fourteen marked squad cars and reaching speeds in excess of 100 miles per hour, Hale slowed the car down, jumped out and ran through the neighboring residential area. Several officers pursued on foot, finally apprehending Hale at gunpoint.

to testify on its behalf at Hale's trial, but was unable to locate him to serve that subpoena. On the morning of the third day of trial, the State advised the court that officers had searched the residence where Sullivan was alleged to be staying, but to no avail. The State then moved to have Sullivan's testimony from Jones's trial admitted pursuant to WIS. STAT. § 908.045(1), the former testimony hearsay exception. The trial court granted the motion, over Hale's objection. The transcript of Sullivan's testimony given at Jones's trial was then read to the jury.

¶ 8. On direct examination at Jones's trial, Sullivan admitted having one prior conviction. Sullivan testified that Hale was a long-time friend whom he had known since childhood. He said he knew that when Hale moved to Kenosha in 2001, he stayed with his sister, Tammie Jones, and that Tammie was married to Robert Jones. Sullivan also testified that Hale had asked him for a gun and that the gun shown to him by the prosecution "look[ed] like" the gun he provided to Hale. Sullivan testified that he had given the gun to Hale at the Jones/Hale residence "about six months ago," which would have been prior to the murders. On cross-examination, Sullivan acknowledged that shortly before the start of the trial he had written a letter to the prosecutor and the judge, asserting that he was "afraid to take the stand" and that he suffered from "some kind of altered mental state" that deprived him of the ability to "distinguish between the truth and [falsity] of what [he had] written in [his] previous statements." Sullivan said he told authorities that he was "sure" he gave a gun to Hale and not to Jones. On redirect examination, Sullivan conceded that his mental state was attributable in part to the guilt he felt about having given Hale the murder weapon.

¶ 9. The State also offered the testimony of Hale's girlfriend, Joy Baker, who testified that Hale had obtained a gun and holster from Sullivan about one week before the murders, and had kept the gun on his person "a lot" before his arrest. She stated that the murder weapon looked like the gun Hale had obtained. Baker testified that on the night of the murders, Hale picked her up in a black four-door vehicle. Baker also testified that she was a passenger in the car Hale was driving when he was apprehended. She stated that during the car chase, Hale asked her to remove the holstered revolver that was strapped across his shoulder and to throw it out the window. She put the gun and some ammunition that Hale gave her underneath the seat. Hale also told Baker that it would be the last time she would ever see him and to write him in jail. She further testified that sometime a few days before the murders, she was with Hale when he purchased a black ski mask. A day or two after he was arrested, Hale called Baker and told her to retrieve the mask from the bottom of a duffel bag they shared and to dispose of the mask, which she did.

¶ 10. In addition, the State offered the testimony of at least two individuals who placed Hale and Jones together on the night of December 8, around the time of the murders. The State also offered the testimony of a detective who test drove and timed the three most likely routes that Hale and Jones might have used on the night of the murders. Finally, the State offered the testimony of Hale's cellmate in jail. His cellmate testified that Hale had confessed that he committed the crimes. Hale produced no witnesses at trial. At the conclusion of the four-day trial, the jury found Hale guilty on all six counts. This appeal followed.

¶ 11. On appeal, Hale seeks a new trial on the grounds that the trial court improperly permitted the State to introduce Sullivan's prior testimony. Hale argues that the trial court should have excluded Sullivan's prior testimony because it did not satisfy the former testimony hearsay exception of WIS. STAT. § 908.045(1). In the alternative, Hale submits that even if the former testimony exception applies, the admission of Sullivan's testimony violated his confrontation rights because the "former testimony" hearsay exception, as applied to Sullivan's testimony, is not "firmly rooted" and because Sullivan's testimony lacked "particularized guarantees of trustworthiness."

■■

¶ 12. A trial court's decision to admit a hearsay statement is a discretionary one, and we will not reverse the trial court's decision unless the record shows that the ruling was manifestly wrong and an erroneous exercise of discretion. *State v. Ballos*, 230 Wis. 2d 495, 504, 602 N.W.2d 117 (Ct. App. 1999). However, whether the admission of hearsay evidence under a statutory exception violates a criminal defendant's right to confront adverse witnesses under the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution presents a question of constitutional fact. *State v. Tomlinson*, 2002 WI 91, ¶ 39, 254 Wis. 2d 502, 648 N.W.2d 367. For such questions, we accept the trial court's findings of historical fact unless clearly erroneous, but independently apply the facts to the constitutional standard. *Id.*

¶ 13. In *State v. Bauer*, 109 Wis. 2d 204, 215, 325 N.W.2d 857 (1982), our supreme court articulated the test reviewing courts are to apply when the defendant both challenges the statutory basis for admitting pur-

179

ported hearsay evidence and alleges a Confrontation Clause violation. The threshold question we are to address is whether the evidence fits within a recognized hearsay exception. *Id.* If not, the evidence must be excluded. *Id.* If so, we must consider the Confrontation Clause. *Id.* There are two requisites to satisfaction of the confrontation right. *Id.* First, the witness must be unavailable. *Id.* Second, the evidence must bear some indicia of reliability. *Id.* If the evidence fits within a firmly rooted hearsay exception, reliability can be inferred and the evidence is generally admissible. *Id.* This inference of reliability does not, however, make the evidence admissible per se. *Id.* The trial court must still examine the case to determine whether unusual circumstances warrant exclusion of the evidence. *Id.* If the evidence does not fall within a firmly rooted hearsay exception, it can be admitted only upon a showing of particularized guarantees of trustworthiness. *Id.*

¶ 14. We now turn to the application of this standard to the facts of the instant case. We first must determine whether Sullivan's testimony falls within a recognized hearsay exception. The trial court based its decision to admit Sullivan's testimony on Wis. Stat. § 908.045(1), which governs the admissibility of "former testimony" and provides:

**Hearsay exceptions; declarant unavailable.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of another proceeding, at the instance of or against a party with an opportunity to develop the

testimony by direct, cross-, or redirect examination, with motive and interest similar to those of the party against whom now offered.

¶ 15. Hale contends that the trial court erred when it concluded that Sullivan's testimony at Jones's trial was admissible under the former testimony exception to the hearsay rule because he and Jones did not share a similar motive and interest in cross-examining Sullivan about his alleged delivery of the murder weapon to Hale. Hale observes that while Sullivan's testimony may have linked Hale to the crime, his testimony did not directly implicate Jones. He contends that, unlike him, Jones's strategy at trial was not so much to discredit Sullivan or to question him in more detail concerning the alleged delivery of the gun but, rather, to disassociate himself from Hale.

¶ 16. This case is akin to *State v. Barksdale*, 160 Wis. 2d 284, 466 N.W.2d 198 (Ct. App. 1991). There, two defendants, Barksdale and Allen, were tried separately for first-degree reckless homicide, party to a crime. *Id.* at 286–87. At his trial, Allen cross-examined an eyewitness in an apparent attempt "to focus the blame on Barksdale and minimize Allen's role in the incident." *Id.* at 288. In between the trials, a key eyewitness died, and his testimony from Allen's trial was admitted at Barksdale's trial. *Id.* at 287. In affirming the trial court's decision to admit the eyewitness's testimony, we noted that the two defendants' interests in cross-examining the witness, while not identical, were very similar because the two had been charged as parties to a crime and, thus, it was immaterial who actually did the killing. *Id.* at 288–89.

¶ 17. The same can be said for Jones and Hale. Because they were both charged as parties to a crime, it was irrelevant whether it was Jones or Hale who actually fired the gun. Bernhardt identified Jones as one perpetrator, other witnesses placed Jones and Hale together shortly before the crimes and the police later found Hale with the murder weapon. Thus, it was in Jones's interest, as well as Hale's interest, to discredit any link between Hale and the murder weapon. As *Barksdale* teaches, the interests need not be identical, they need only be similar. *See State v. Hickman*, 182 Wis. 2d 318, 327, 513 N.W.2d 657 (Ct. App. 1994). The trial court therefore did not erroneously exercise its discretion in admitting Sullivan's testimony pursuant to the former testimony hearsay exception of WIS. STAT. § 908.045(1).

¶ 18. Because we hold that the testimony is admissible pursuant to the statutory rules of evidence, we next address whether Hale's constitutional right to confrontation nevertheless has been violated. As explained, in order for a hearsay statement to be admitted against a criminal defendant, the witness must be unavailable and the statement must either (1) fall within a "firmly rooted" hearsay exception with no unusual circumstances undermining the reliability of the proffered evidence; or (2) contain particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *Bauer*, 109 Wis. 2d at 215; *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). Neither party disputes that Sullivan was unavailable to testify at Hale's trial. We therefore turn to the question of whether the former testimony hearsay exception as

182

applied to the introduction of testimony from a codefendant's trial in which the defendant did not participate is a "firmly rooted" hearsay exception.

¶ 19. In *Bintz*, we were confronted with this very question. There, two brothers, David and Robert Bintz, were tried separately for first-degree murder, party to a crime. *Bintz*, 257 Wis. 2d 177, ¶ 5. At David's trial, a cellmate of his recounted statements that David had made incriminating both David and Robert. *Id.*, ¶¶ 3–5. The cellmate also testified at Robert's preliminary hearing, but died before his trial. *Id.*, ¶ 5. The cellmate's statements from both David's trial and Robert's preliminary hearing were allowed into evidence at Robert's trial pursuant to the former testimony hearsay exception. *Id.*, ¶¶ 17, 19. On appeal, Robert argued that the admission of the cellmate's prior testimony violated his confrontation rights. *Id.*, ¶ 20. We concluded, without explanation, that the cellmate's prior testimony from the trial and the preliminary hearing fell under a firmly rooted hearsay exception. *Id.* As we did not observe any unusual circumstances suggesting that the cellmate's testimony should be considered unreliable, we concluded that the admission of the testimony did not violate Robert's confrontation rights. *Id.*

¶ 20. There are similarities between this case and *Bintz* and there are dissimilarities. Like the defendant in *Bintz*, Hale challenges the admission at his trial of testimony from a codefendant's trial pursuant to the former testimony hearsay exception. And like the defendant in *Bintz*, Hale argues that the admission of such testimony violates his confrontation rights because the former testimony exception is not a "firmly rooted" hearsay exception.

¶ 21. Unlike *Bintz*, however, Hale never had the opportunity to cross-examine the witness at any time, in any proceeding. In *Bintz*, while it is true that Robert did not have the opportunity to cross-examine the cellmate witness during his brother's trial, he did have the opportunity to cross-examine the cellmate during his own preliminary examination.

¶ 22. The *Bintz* court could have determined that because Robert had the opportunity to cross-examine the cellmate during his own preliminary examination, confrontation was thus satisfied despite the fact that Robert did not have a similar opportunity to cross-examine the cellmate during his brother's trial. However, the *Bintz* court did not use this line of reasoning. Rather, it simply stated, "we note the [prior testimony] falls under a firmly rooted hearsay exception," providing no explanation for this conclusion. *Id.* Based on this short statement, the *Bintz* court admitted both the preliminary hearing testimony and the testimony obtained at the co-actor brother's trial.

██

¶ 23. We have entertained the thought that we could thus limit *Bintz* to its facts and decide the "firmly rooted" hearsay exception anew. But we think we would be intellectually dishonest in doing so. *Bintz* specifically states that the exception for testimony from a coactor's trial is "firmly rooted" and we can see no way around this statement. We are therefore bound by our conclusion that the former testimony exception as used in the circumstances of this case is a "firmly rooted" exception.[3] *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560

---

[3] We note that in *State v. Hickman*, 182 Wis. 2d 318, 320, 328, 513 N.W.2d 657 (Ct. App. 1994), we held that the testimony of an alleged co-conspirator at the co-conspirator's prosecution

N.W.2d 246 (1997) (concluding that only the supreme court has the authority to overrule, modify or withdraw language from a published opinion of the court of appeals).

¶ 24. We note that *Bauer* teaches how, even if a hearsay exception is firmly rooted, the exception nonetheless may be attacked by showing that there are unusual circumstances undermining the reliability of the proferred evidence. *Bauer,* 109 Wis. 2d at 215. Hale does not argue that any unusual circumstances exist and we cannot perceive of any that would warrant the exclusion of Sullivan's prior testimony. Therefore, *Bintz* controls the confrontation issue here.

¶ 25. Having ruled as we have, we still take the time to state that were we writing on a clean slate, we would hold that the former testimony hearsay exception as applied to the facts of this case is not "firmly rooted." We do so after careful consideration of the Federal Rules of Evidence, the rules of evidence of other states, case law and commentaries. We do so because we feel that the issue is important enough to warrant supreme court review.

¶ 26. First, given the history and very limited acceptance of the exception for the former testimony of a witness given at a trial at which the accused was not a party, we are hesitant to characterize the exception as being "firmly rooted." While former testimony has long been admitted as an exception to the hearsay rule, the Federal Rules of Evidence do not permit the former

---

was admissible under the hearsay exception for former testimony and unusual circumstances warranting exclusion of the testimony pursuant to the Confrontation Clause did not exist. The parties did not dispute that the co-conspirator's testimony fell within a "firmly rooted" hearsay exception and, consequently, we did not address the issue. *Id.* at 328.

testimony of an unavailable witness to be introduced against a criminal defendant unless the defendant was a party to the prior proceeding.[4] In rejecting language that would have permitted the admission of such testimony, the House Judiciary Committee explained:

> The Committee considered that it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party. The sole exception to this, in the Committee's view, is when a party's predecessor in interest in a civil action or proceeding had an opportunity and similar motive to examine the witness.

H.R. REP. No. 93–650 (1973), *reprinted in* 1974 U.S.C.C.A.N. 7075, 7088. In adopting a version of the rules of evidence that permitted former testimony to be admitted, the Judicial Council Committee left the confrontation issues unresolved, stating only that "[t]he confrontation problems referred to in the Federal Advisory Committee's Note are for resolution as constitutional rather than evidence law problems in keeping

---

[4] The hearsay exception for former testimony under the Federal Rules of Evidence reads:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination.

FED. R. EVID. 804(b)(1).

with the form and purpose of these rules of evidence." Judicial Council Committee Note, 1974, Wis. Stat. § 908.045.

¶ 27. Our research demonstrates that the majority of other states have adopted the Federal Rules verbatim and only two other states—Hawaii and Nebraska—have a rule identical to Wis. Stat. Rule § 908.045. *See* Haw. Rev. Stat. § 626–1 (2002); Neb. Rev. Stat. § 27–804(2)(a) (2003). We have been unable to locate a single published case from either jurisdiction permitting the state to introduce against a criminal defendant testimony given at a prior proceeding at which the defendant was neither present nor afforded the opportunity for cross-examination. Thus, it appears that Wisconsin is the only jurisdiction to have expressly allowed the introduction of such evidence pursuant to its rules of evidence.

¶ 28. Second, when, as here, the State seeks to offer the testimony of a witness given at the separate trial of an alleged accomplice, and the witness is not presently available to testify at the defendant's trial, the defendant is denied his or her usual right to force the witness to submit to cross-examination, and it appears that a confrontation problem does arise. Stanley A. Goldman, *Not So "Firmly Rooted": Exceptions to the Confrontation Clause,* 66 N.C. L. Rev. 1, 19 (1987); *see also State v. Norman,* 2003 WI 72, ¶ 36, 262 Wis. 2d 506, 664 N.W.2d 97 (holding that the right to confrontation contemplates the personal examination of a witness by the defendant, such that the defendant has the opportunity to test the witness's memory and credibility in the presence of the fact finder). Although the alleged accomplice may have had the same motive to cross-examine the unavailable witness as does the

accused, that fact alone is not sufficient to satisfy the accused's right to confrontation. *See* Goldman, *supra,* at 19.

¶ 29. Finally, in *Bintz,* we cited to *Bauer,* without any explanation, as authority for our conclusion and we question whether *Bauer* actually lends support for our conclusion in *Bintz.* In *Bauer,* our supreme court held that preliminary hearing testimony fell within a "firmly rooted" hearsay exception. *Bauer,* 109 Wis. 2d at 216. Our supreme court has affirmed this holding in subsequent cases. *Norman,* 262 Wis. 2d 506, ¶ 30; *State v. Stuart,* 2003 WI 73, ¶ 36, 262 Wis. 2d 620, 664 N.W.2d 82. However, the holdings of *Bauer* and its progeny speak specifically to the former testimony hearsay exception as it applies to the defendant's preliminary hearing testimony. Nothing in the language of these opinions suggests that their holdings are broad enough to encompass the former testimony exception as applied in this case.

¶ 30. We once again recognize that as a published court of appeals decision, *Bintz* controls the outcome of this case, *see Cook,* 208 Wis. 2d at 189–90, and, thus, we must hold that the former testimony hearsay exception as applied in this matter is "firmly rooted." However, for the foregoing reasons, were we to write this decision on a clean slate, we would conclude that the former testimony hearsay exception, when used to permit the introduction of testimony from a codefendant's trial in which the defendant did not participate, is not a "firmly rooted" hearsay exception.

■

¶ 31. Even if we are correct, and the former testimony hearsay exception is not "firmly rooted," Sullivan's testimony would still be admissible if supported by particularized guarantees of trustworthiness.

In evaluating whether adequate guarantees of trust-worthiness exist, a court may not look to evidence that corroborates the veracity of the statement. Rather, the court must consider the totality of the circumstances surrounding the making of the statement and determine whether the declarant was so likely to be telling the truth that cross-examination of the declarant would be of marginal utility. *Idaho v. Wright*, 497 U.S. 805, 820 (1990). Here, at Jones's trial, Sullivan testified under oath, not only subject to perjury if he testified falsely, but also subject to losing the use immunity that the State had promised him for truthful testimony. Further, Jones not only had a full opportunity to cross-examine Sullivan, but, as previously discussed, Jones also had a motive and an interest similar to those of Hale to impeach Sullivan's credibility and actually sought to do so by challenging Sullivan's mental state. Finally, as evidenced by the letter he sent to the court prior to Jones's trial, Sullivan was reluctant to testify. Sullivan was a long-time friend of Hale's and did not want to implicate him. He also felt guilty about providing a gun that was used to kill two people. The testimony itself is straightforward and relates to an event that occurred before the murder. Sullivan gave his friend a gun. That is all. There is no reason for him to lie about that. Little could be gained by further cross-examination. In short, we can conceive of no possible reason to question the trustworthiness and reliability of Sullivan's testimony. Although Hale complains that Jones's counsel should have done more in cross-examining Sullivan, Hale fails to identify how additional cross-examination of Sullivan would have benefited him.

¶ 32. Although the Sixth Amendment right to confrontation envisions the personal examination of a witness by a defendant, this fundamental right to confrontation must, at times, be dispensed with in order to accommodate competing interests such as effective law enforcement and precise workable rules of evidence in criminal proceedings. *Norman*, 262 Wis. 2d 506, ¶ 36. Accordingly, both the United States Supreme Court and our supreme court have held that when a witness is unavailable for trial, hearsay evidence may be admitted when there has been "substantial compliance with the purposes behind the confrontation requirement." *Id*. Those purposes are satisfied when the trier of fact has a reasonable basis for evaluating the truthfulness of the prior statement. *Id*. We are convinced that given the circumstances under which Sullivan testified in this case, the jury had a reasonable basis for evaluating the truthfulness of his statements. Thus, were we not bound by *Bintz*, we would instead affirm on the basis that Sullivan's prior testimony possessed the requisite particularized guarantees of trustworthiness and that it was properly admitted into evidence on that basis.[5]

---

[5] We note that an alternative basis for our holding is the residual hearsay exception found in WIS. STAT. § 908.045(6). Under this provision, the statements of an unavailable witness that are not specifically covered by any of the other enumerated exceptions, but have comparable circumstantial guarantees of trustworthiness, are admissible. *Id*. Our analysis using this standard would mimic our above application of the "particularized guarantees of trustworthiness" test. Thus, were we to conduct an analysis of Sullivan's testimony using the residual hearsay exception, we would reach the same result for the above reasons.

*By the Court.*—Judgment affirmed.

In any event, the State argues that even if the trial court erred in admitting Sullivan's prior testimony, the error was harmless. The jury knew that the police found the gun used in the murders in the car Hale was driving during the chase; the jury heard testimony suggesting that the car Hale was driving on the night of the murders was at the scene of the crimes; the jury heard testimony from a detective demonstrating that given Hale's activities around the time of the murders, he could have committed the crimes; the jury heard testimony from a witness identifying Jones as one of the perpetrators; the jury heard testimony establishing that Hale and Jones were together on the night of the murders; the jury heard the testimony of Hale's girlfriend that prior to the murders, Hale had purchased a ski mask and obtained a gun and holster from Sullivan, that during the car chase he told her it was probably the last time she would see him and to write him in jail and that following his arrest, he asked her to destroy the ski mask; and finally, the jury heard the testimony of Hale's cellmate that Hale had confessed to him. In light of this overwhelming evidence, we also could have affirmed on the basis that it is clear beyond a reasonable doubt that a rational jury would have convicted even without Sullivan's prior testimony and, thus, the error was harmless. *See State v. Weed,* 2003 WI 85, ¶ 29, 263 Wis. 2d 434, 666 N.W.2d 485.